UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| RICHARD PAUL KARR,<br><br>          Plaintiff,<br><br>   v.<br><br>JANET NAPOLITANO, Secretary of the Department of Homeland Security<br><br>          Defendant.<br>_____/ | No. C 11-02207 LB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**I. INTRODUCTION**

Plaintiff Richard Karr, a United States Customs and Border Protection ("CBP") officer, sued his employer after he was demoted and suspended following an investigation concerning his request to a subordinate employee to improperly access a computer database. Complaint, ECF No. 1 at 7-10, ¶¶ 36-50.[1] Mr. Karr alleges that his removal was discriminatory and retaliatory in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, as amended by the Americans with Disabilities Act of 1990, 12 U.S.C. § 12101, *et seq.*, and the Americans with Disability Act Amendments Act of 2008, P.L. 110-325 (Claims One and Two), and was retaliatory and constituted an adverse employment action in violation of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1201, *et seq.*, as amended by the Whistleblower Protection Act, 5 U.S.C. § 2302 (Claim Three). *Id.* at 10-14, ¶¶ 51-

---

[1] Citations are to the clerk's electronic case file (ECF) with pin cites to the electronic page numbers at the top (as opposed to the bottom) of the page.

C 11-02207 LB

97. These claims were reviewed initially by the Merit Systems Protection Board ("MSPB"), which upheld Mr. Karr's demotion and suspension. *Id.* at 3, ¶ 6. Defendant Janet Napolitano, Secretary of the Department of Homeland Security ("DHS"), now moves for summary judgment on the non-discrimination claims. Defendant's Motion, ECF No. 29. Upon review of the papers submitted, the court GRANTS Defendant's motion for partial summary judgment because there are no issues of material fact that would call into question whether (A) the MSPB's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (B) obtained without procedures required by law, rule, or regulation having been followed, or (C) unsupported by substantial evidence.[2]

## II. BACKGROUND

A. Mr. Karr's Previous Positions and Prior Suspensions

Mr. Karr began working for the Immigration and Naturalization Service ("INS") in 1988, and became a supervisor in 1995. MSPB 0831.[3] On March 1, 2003, Mr. Karr moved from the INS to the CBP, an agency within the DHS, where he held a similar position that is now called a Supervisory Customs and Border Protection Officer ("SCBPO"). *Id.*

Mr. Karr served three suspensions from 2004 to 2009:

- On May 5, 2004, Mr. Karr served a three-day suspension for: (1) failing to follow instructions directing him not to go outside the chain of command and independently contact representatives of foreign governments; and (2) granting a waiver allowing a foreign national to enter the country without obtaining authorization from his chain of command. MSPB0495; MSPB0497-98.

- On October 26, 2006, Mr. Karr served a ten-day suspension for again failing to follow instructions directing him not to go outside the chain of command and independently contact foreign government officials. MSPB0488-89.

---

[2] Pursuant to Civil Local Rule 7-1(b), the court finds this matter to be suitable for determination without oral argument and vacates the March 15, 2012 hearing.

[3] "MSPB" citations refer to pages of the administrative record that was manually submitted in this case with bates-stamps that ranged from MSPB0001-MSPB1877.

- On June 10, 2009, Mr. Karr served a 21-day suspension for once again failing to follow instructions directing him not to go outside the chain of command and independently contact foreign government officials. MSPB0482-83; MSPB0485.

B. The January 8, 2009 Incident and Mr. Karr's Subsequent Suspension and Demotion

On January 8, 2009, Mr. Karr, then a GS-12 SCBPO in San Francisco, California, telephoned a CBP passenger targeting unit, identified himself by name and title, and asked a lower-ranked officer to perform an improper database search to see if his wife, who is a flight attendant, was onboard a particular flight. MSPB0285-87; MSPB0433-35; MSPB0441-46. Mr. Karr did this for his own personal convenience. MSPB0446 ("I knew I had to coordinate transportation logistics to pick her up at the airport."). The officer refused to perform this improper search and notified her chain of command, which in turn notified Internal Affairs. MSPB0443; MSPB0456.

The CBP conducted an investigation into the incident. MSPB0441-0481. During that time, Mr. Karr temporarily was reassigned from the San Francisco International Airport Air Mail Facility to the Drawback Unit at the San Francisco Customhouse, and his firearm was removed and his access to system databases was limited. MSPB0267; MSPB0281; MSPB0419; MSPB0778; MSPB0780; MSPB0795; MSPB1695-96. These steps are routine in cases involving such misconduct. MSPB0780. Mr. Karr continued to receive his GS-12 salary, but he was not permitted to work overtime due to the firearm removal and loss of system access. MSPB0267; MSPB0281; MSPB0795.

The CBP's Discipline Review Board ("DRB") convened and considered Mr. Karr's case. MSPB0521-22. On October 19, 2009, the DRB proposed that Mr. Karr be suspended from duty and pay for 45 days and be demoted from the position of GS-12 supervisory CBP officer to the position of GS-11 journeyman CBP officer. MSPB0832; MSPB0433. Mr. Karr provided written and oral replies to the proposed action on December 7, 2009 and December 10, 2009, respectively. MSPB0832; MSPB0294; MSPB0423-27. These replies were presented to Seattle Director of Field Operations Michelle James. On July 6, 2010, Ms. James issued a decision sustaining the charges, agreeing that demotion was warranted, but mitigating the suspension to from 45 to 30 days. MSPB0285-87. On July 18, 2010, the CBP implemented the demotion and suspension.

1  MSPB0832; MSPB0281; MSPB0283.

C.  Mr. Karr's Formal EEO Complaint

On July 13, 2009, Mr. Karr contacted a field EEO Manager to seek informal counseling regarding alleged discrimination.  MSPB0776.  The San Francisco EEO Manager met with Mr. Karr, confirmed his claims, and, on August 19, 2009, issued a notice informing Mr. Karr of his right to file a formal EEO complaint within 15 days.  MSPB0776-84.

On September 6, 2009, Mr. Karr did so.  His EEO employment discrimination complaint alleged that he was subjected to a hostile work environment because of his physical disabilities (sleep apnea/hearing/sight/spine), prior EEO activity, and age, which resulted in several reassignment and suspensions.  *See* MSBP0758-75.[4]

On September 22, 2009, Mr. Karr was informed that his EEO complaint was not timely filed because it was not submitted within 15 days of receipt of the notice, as required by 29 C.F.R. ss 1614.106(b).  MSPB0805-09.  Mr. Karr was provided with an opportunity to explain why the EEO complaint was not timely filed, and on October 6, 2009, he argued that it was timely and stated that "most correspondence requiring a response is usually in business days and does not include weekends or holidays."  MSPB0805-09; MSPB0803-84.[5]

---

[4] According to Mr. Karr, these reassignments and suspensions included the following:

• In November 2007, the CBP reassigned him to the East Bay Station in Oakland.
• In February 2009, the CBP reassigned him to the Air Mail Facility at the San Francisco International Airport, denied him overtime, and denied him the opportunity to attend a Special Emphasis Program event.
• On June 22, 2009, management suspended his employment for 21 days.
• On July 13, 2009, management temporarily relieved him of his supervisory responsibilities, reassigned him to the Customhouse in San Francisco, California, removed his credentials, and denied him overtime.

*See* MSBP0758-75.

[5] Also, on October 23, 2009, Mr. Karr contacted the San Francisco EEO Manager because he wanted to amend his EEO complaint to include the DRB's October 19, 2009 proposal notice for the demotion and 45-day suspension as an additional discriminatory act.  MSPB0429-30.  The San Francisco EEO Manager informed him that the proposal did not raise an actionable issue and that he would need to wait until a final decision issued (as it did in July 2010) so he could show actual

On November 3, 2009, Mr. Karr's EEO complaint was dismissed for untimely filing. MSPB0813-14; *see* 29 C.F.R. § 1614.107(a)(2). The dismissal notice was sent via e-mail and advised Mr. Karr that it constituted the final action by the agency and advised him of his appeal rights. MSPB0813-14. Plaintiff did not file any appeal of this final agency decision. *Id.*; MSPB0943-44, Deposition of Richard Karr, 122:6-125:3.

### D. Mr. Karr's Request for Accommodation

On December 10, 2009, Mr. Karr contacted the San Francisco EEO Manager to request accommodation relating to his temporary assignment performing non-supervisory duties at the San Francisco Customhouse. MSPB 0416; MSPB 0857. He asked to be assigned to the San Francisco International Airport Air Mail Facility as a reasonable accommodation for sleep apnea because it is closer to his residence in San Mateo, and he claimed the shorter commute would help him with his sleep. MSPB0416. Because, however, Mr. Karr had limited system access in connection with the pending discipline, the CBP preferred to keep Mr. Karr at the San Francisco Customhouse pending issuance of the final decision on the proposed disciplinary action. *See id.* On December 15, 2009, the CBP engaged in an interactive dialogue with Mr. Karr, and he agreed to remain working at the San Francisco Customhouse while his discipline was pending and to work with his supervisor to devise a modified work schedule to address his sleep concerns. *See id*; see also MSPB0416.

### E. Mr. Karr's Administrative Appeal to the MSPB

On July 23, 2010, Mr. Karr filed an appeal with the MSPB challenging his demotion and 30-day suspension (which began on July 18, 2010). The appeal raised affirmative defenses of:

- harmful procedural error;
- disparate treatment based on disability discrimination (sleep apnea);
- failure to accommodate his disability of sleep apnea;
- reprisal for engaging in EEO activity;
- retaliation for engaging in whistle-blowing activities; and
- violation of 5 U.S.C. § 2302(b)(12), which prohibits the CBP from taking or failing to take any

---

harm. MSPB0429. Mr. Karr replied that he would consult with an attorney and decide if he wanted to pursue a separate EEO complaint. MSPB 0430; see also MSPB0429.

personnel action that would violate "any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in" 5 U.S.C . § 2301.

*See* MSPB0840-61. After the parties conducted both written discovery and depositions, the matter proceeded to hearing, which lasted three days, and on March 18, 2011, the Administrative Judge ("AJ") issued an Initial Decision affirming the CBP's action. MSPB0830-75. The AJ found that the CBP had proved the charged misconduct, namely, that "it was a misuse of his position for [Mr. Karr], after identifying himself as a supervisor, to request this information from officers who were lower in rank than him, knowing that they would have to access TECS [a sensitive law enforcement database] based on his own personal request, rather than based on an official business reason." MSPB 0839. The AJ found that Mr. Karr made the request for "personal convenience." *Id*. The AJ also found that the CBP met its burden of proving the nexus between the proven misconduct and Mr. Karr's duties and legitimate government interests. MSPB 0840.

The AJ also rejected each of Mr. Karr's affirmative defenses. MSPB0840-61. Specifically, the AJ found the following:

- there were no harmful procedural errors or prohibited personnel practices in the CBP's response to Mr. Karr's discovery requests, the CBP's issuance of what otherwise could have been viewed as two separate adverse actions for one charge, the CBP's reassignment of Mr. Karr to the San Francisco Customhouse pending the issuance of the decision, or the CBP's assignment of a deciding official (Ms. James) from outside Mr. Karr's chain of command (MSPB 0841-46);

- Mr. Karr failed to prove any causal connection between his claimed disabilities and the charged conduct (and, while not making a finding as to whether Mr. Karr was a qualified individual with a disability, the AJ did note that Mr. Karr had received accommodations after requesting them in December of 2009) (MSPB0856);

- Mr. Karr failed to meet his burden of proof with respect to the affirmative defense of whistleblowing, noting that "the [CBP's] evidence in support of its action is strong," and finding that, "even in the absence of [Mr. Karr's] alleged disclosures, the [CBP] would have taken the same action," and that Mr. Karr's disclosures were not protected (MSPB0849-51); and

- Mr. Karr had presented "no evidence, aside from his assertions, that his demotion and 30-day

suspension were in retaliation for requesting reasonable accommodation"and that Ms. James was credible in stating that she had not retaliated against Mr. Karr ( MSPB086).

The AJ also deferred to the CBP and found the penalty reasonable as the CBP sufficiently and thoughtfully considered the factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981).  MSPB 0869.  The AJ noted that the CBP had considered mitigating factors to reduce the penalty, and agreed with the CBP's finding that the conduct was "very serious" considering Mr. Karr's position as a supervisor and law enforcement officer.  MSPB0863.  The AJ also made several adverse credibility findings as to Mr. Karr's claims and testimony.  *See* MSPB0863 (finding his claims that "he was not aware" that asking a subordinate for the information about his wife's flight was improper or would likely require querying the TECS database, was "not credible"); MSPB0838 (noting that his "varying characterizations" of an emergency "do not explain why he contacted the RCC"); MSPB0864 (noting that his expression of remorse on the witness stand was "stated unconvincingly").

F. Mr. Karr's Federal Complaint and Defendant's Motion for Partial Summary Judgment

On May 5, 2011, Mr. Karr filed his federal complaint in district court.  Complaint, ECF No. 17. The complaint raises three claims: (1) disability discrimination, (2) retaliation for EEO activity, and (3) adverse employment actions in violation of Civil Service Reform Act and Whistleblower Protection Act.  *Id*. at 10-14.  Mr. Karr requests an injunction: (1) requiring the government to abolish prohibited personnel practices; (2) requiring the government to reinstate him as a SCBPO; and (3) requiring the government to expunge "all negative documentation," including evidence of the four suspensions and the demotion, from his personnel file.  *Id*. at 15.  He also requests economic damages for lost pay, compensatory damages for emotional distress, attorney's fees and costs, and any other relief the court may deem just and proper.  *Id*. at 15-16.

On January 30, 2012, in accordance with this court's case management scheduling order, Defendant filed a motion for partial summary judgment.  Motion, ECF No. 29. Defendant requests summary judgment in its favor with respect to Mr. Karr's non-discrimination claims, namely, his adverse employment action claim under the Civil Service Reform Act and the Whistleblower

1  Protection Act. *See id.*[6] Mr. Karr opposed the motion. Opposition, ECF No. 31.

## III. LEGAL STANDARD

A. <u>Summary Judgment Standard</u>

Summary judgment is proper if the pleadings, the discovery and disclosures on file, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.* at 248-49.

The party moving for summary judgment has the initial burden of identifying those portions of the pleadings, discovery and disclosures on file, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmoving party has the burden of proof at trial, the moving party need point out only "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the moving party meets this initial burden, the non-moving party must go beyond the pleadings and – by its own affidavits or discovery – set forth specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

B. <u>Standard of Review of MSPB Decision</u>

The Civil Service Reform Act provides the remedy for a federal employee appealing a termination. For a case involving the appeal of a personnel action, the federal employee appeals first to the MSPB and then to the Court of Appeals for the Federal Circuit. *See* 5 U.S.C. §§ 7513(d), 7701(a), 7703. But if a case involves both an appeal of a personnel action and a claim of discrimination – a so-called "mixed" case – then judicial review is in the district court. 5 U.S.C. § 7703(b)(2); *Washington v. Garrett*, 10 F.3d 1421, 1428 (9th Cir. 1993). In mixed cases, the district

---

[6] Defendant's motion only concerns Mr. Karr's non-discrimination claims.

UNITED STATES DISTRICT COURT
For the Northern District of California

court has jurisdiction to review both the lawfulness of the personnel action and the discrimination claim. *Romain v. Shear*, 799 F.2d 1416, 1420 n.1 (9th Cir. 1986).

In mixed cases, the district court reviews the discrimination claims *de novo* and the non-discrimination claims under a deferential standard, setting aside the MSPB's decision regarding the nondiscrimination claims only if the decision was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Washington*, 10 F.3d at 1428 (quoting 5 U.S.C. § 7703(c); *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 774 n.5 (1985)); *Romain*, 799 F.2d at 1421.[7]

## IV. DISCUSSION

A.  Civil Service Reform Act Claim

As stated above, with respect to his non-discrimination claims, Mr. Karr must show that the MSPB's decision was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Washington*, 10 F.3d at 1428 (quoting 5 U.S.C. § 7703(c); *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 774 n.5 (1985)); Romain, 799 F.2d at 1421.

He has not. As the administrative record shows, Mr. Karr had a full and fair opportunity to

---

[7] Mr. Karr nonetheless argues that the government misstates the standard of review in "mixed cases." Plaintiff's Opposition, ECF No. 31 at 5-8. Mr. Karr cites 5 U.S.C. §§ 7702 and 7703(c) and apparently argues that the district court reviews *de novo* all claims in a mixed case. *Id*. Mr. Karr ignores clear Ninth Circuit authority establishing the standard of review, and the cases he cites do not address the standard of review for non-discrimination claims, as he suggests. *See Bonds v. Leavitt*, 629 F.3d 369 (4th Cir. 2011); *Tolliver v. Deniro*, 790 F.2d 1394, 1396 (9th Cir. 1986); *Williams v. Dep't of Army*, 715 F.2d 1485, 1488-91 (Fed. Cir. 1983) (en banc). This argument is particularly inappropriate in light of two facts: (1) this court previously rejected the same argument by Mr. Karr's counsel (Ms. Dryovage) in another case, s*ee Mandujano v. Geithner*, No. C 10-01226 LB, 2011 U.S. Dist. LEXIS 28237, at *10 (N.D. Cal. Mar. 17, 2011); and (2) Mr. Karr already impliedly conceded that the standard of review stated above applied when he stipulated to exclusion of a joint statement of undisputed material facts because the non-discrimination claims under the CSRA are based on the court's review of the administrative record and not new facts, see Stipulation, ECF No. 25 at 2, ¶ 3-4, n.1 (quoting the appropriate standard of review).

1 litigate his claims at the administrative level and the AJ's ruling was well-reasoned and well-
2 supported. After considering in detail the testimony and evidence presented, the AJ made the
3 following explicit and supported findings:

- the CBP proved the charged misconduct – that is, that "it was a misuse of his position for [Mr. Karr], after identifying himself as a supervisor, to request this information from officers who were lower in rank than him, knowing that they would have to access TECS [a sensitive law enforcement database] based on his own personal request, rather than based on an official business reason";
- the CBP met its burden of proving the nexus between the proven misconduct and Mr. Karr's duties and legitimate government interests;
- the CBP's imposed penalty was reasonable as the agency adequately and thoughtfully considered the *Douglas* factors and considered mitigating factors regarding the penalty; and
- the CBP's issuance of a suspension and a demotion constituted one unified penalty and, thus, did not constitute "double jeopardy."[8]

MSPB0839; MSPB0840; MSPB0869-70. The AJ also found that Mr. Karr was not a credible witness and lacked remorse for his misconduct. MSPB0838; MSPB0863-64.

In addition, as described in detail above, the AJ properly rejected each of Mr. Karr's affirmative defenses after a full discussion of each of them. MSPB0840-61.

In his opposition, Mr. Karr did not even attempt to rebut Defendant's arguments – made upon its citation of the above facts – that he did not receive a fair and full opportunity to litigation, let alone succeed in showing that the MSPB's decision was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."[9]

---

[8] In making this determination, the AJ also properly found that Mr. Karr's 2009 reassignment did not constitute an adverse action, because it did not implement a reduction in grade. MSPB0843, MSPB0870; *see also Pierce v Merit Systems Protection Board*, 242 F.3d 1373, 1375 (Fed. Cir. 2001).

[9] Out of an abundance of caution, Defendant, in its motion, rebuts Mr. Karr's potential argument – although it is not entirely clear whether he makes it or not – that the AJ committed

1    Accordingly, the court GRANTS Defendant's motion for summary judgment with respect to Mr.
2 Karr's claim of an adverse employment action under the CSRA.

3 B.  Whistleblower Protection Act Claim

4    The Whistleblower Protection Act protects federal agency employees from reprisals for
5 whistleblowing activity, such as "disclosing illegal conduct, gross mismanagement, gross wasting of
6 funds, or actions presenting substantial dangers to health and safety." *Pacilli v. United States Dep't*
7 *of Veterans Affairs*, 2006 U.S. Dist. LEXIS 57087, Case No. CV-F-05-1095 OWW SMS, at *8-12
8 (E.D. Cal. July 31, 2006) (citing 5 U.S.C. § 2302(b)(8)).  An employee claiming to have suffered an
9 unlawful reprisal must first bring his or her claim to the Office of Special Counsel ("OSC").  *Id.*
10 (citing 5 U.S.C. § 1214).  Only after the OSC's investigation can the employee bring the claim
11 before the MSPB.  *Id.*; *see* 5 U.S.C. §§ 1221, 1214(a)(3).  "'Under no circumstances,' however,
12 "does the WPA grant the District Court jurisdiction to entertain a whistle-blower cause of action
13 brought directly before it in the first instance.'"  *Pacilli*, 2006 U.S. Dist. LEXIS 57087, at *10
14 (quoting *Stella v. Mineta*, 350 U.S. App. D.C. 300, 284 F.3d 135, 142 (D.C. Cir. 2002)).

15    Nowhere in Mr. Karr's complaint did Mr. Karr allege that he first brought his WPA claim before
16 the OSC.  *See generally*, Complaint, ECF No. 1.  Nor does he point to any evidence suggesting that
17 he did, either.  *See generally*, Opposition, ECF No. 31.  In fact, in his opposition, Mr. Karr fails to
18 address any of Defendant's arguments with respect to the WPA.  *See generally id.*

---

procedural error by conducting an *in camera* review of disciplinary actions taken against other CBP employees but not letting some of those actions into the record. Motion, ECF No. 29 at 17-19 (citing Complaint, ECF No. 1 at 9, ¶ 48).  Procedural matters relative to discovery and evidentiary issues fall within the sound discretion of the MSPB and its officials.  *Curtin v. Office of Personnel Mgmt*, 846 F.2d 1373, 1378-79 (Fed. Cir. 1988) (citing 5 C.F.R. § 1201.41(a), (b); *Spezzaferro v. FAA*, 807 F.2d 169, 173 (Fed. Cir. 1986)).  The court may not "overturn the [MSPB] on such matters unless an abuse of discretion is clear and is harmful."  *Id.*  Here, Mr. Karr failed to respond to Defendant's argument in his opposition (including Defendant's claim that Mr. Karr failed to respond to the CBP's offer to meet and confer about any further discovery issues, *see* Motion, ECF No. 29 at 13-14) and has not presented any evidence to support a position that the AJ's decision constituted an abuse of discretion.  *See generally* Opposition, ECF No. 31.  Even he had, given the AJ's robust analysis in support of the decision, it is unlikely that he would be able to show, as he must, that the abuse of discretion was a harmful error and affected the outcome of his case.  *See* 5 U.S.C. § 7701(c)(2)(A); 5 C.F.R. § 1201.56(b)(1); *Smith v. United States Postal Serv.*, 789 F.2d 1540, 1545 (Fed. Cir. 1986).

C 11-02207 LB
11

1  For this reason, Mr. Karr's claim fails. The court GRANTS Defendant's motion for summary

2 judgment with respect to Mr. Karr's claim under the WPA.[10]

3 C. Mr. Karr's Claim in His Opposition that Defendant Failed to Properly Consider and Apply the

4 *Douglas* Factors

5  Mr. Karr, for the first time, argues in his opposition that Defendant failed to properly consider

6 the factors set forth in *Douglas v. Veterans Administration*, 5. M.S.P.R. 280 (1981), when

7 determining his penalty. Opposition, ECF No. 31 at 8-10.[11] Mr. Karr argues that, "[i]nstead of

---

[10] Even if he had, though, Mr. Karr failed to prove his claim. To succeed on his claim, Mr. Karr must have proven that: (1) the acting official had the authority to take action with respect to him; (2) he made a disclosure protected under the WPA; (3) the acting official used his authority to take a personnel action against him; and (4) the acting official took the personnel action against him because of the protected disclosure. *See LaChance v. White & Merit Systems Protection Board*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). Mr. Karr had the burden of proving that protected disclosures were made. *See id*. As Defendant pointed out, though, Mr. Karr failed to allege or otherwise point to any disclosures protected by the WPA. *See* Motion, ECF No. 29 at 21-22. Even so, the AJ considered Mr. Karr's affirmative defense in her Initial Decision and rejected it, *see* MSPB00846-849, and Mr. Karr has not presented any evidence that she abused her discretion in doing so, *see generally*, Opposition.

[11] The twelve factors listed in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), are as follows: (1) the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties; (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) consistency of the penalty with any applicable agency table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that where violated in committing the offense, or had been warned about the conduct in question; (10) potential for the employee's rehabilitation; (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others. *See id.* at 305-06.

selecting an appropriate penalty, given [the *Douglas* factors], [Defendant] gave [him] two penalties: demotion and [a] 30[-]day suspension for making one brief phone call on January 8, 2009." *Id*. at 10.

Although he makes this claim (which does not appear in his complaint), Mr. Karr fails to provide any evidence to back it up. Perhaps this is because none exists. As Defendant's citation to the record makes abundantly clear, both Ms. James and the AJ explicitly considered the *Douglas* factors and explained how they applied (or did not apply) to Mr. Karr's case. *See* MSPB0285-86; MSPB01262-67; MSPB01269-91; MSPB0861-72. After a lengthy discussion, the AJ concluded that, in light of the *Douglas* factors, Mr. Karr's demotion and 30-day penalty was reasonable. MSPB0869.

The district court's review of the MSPB's decision with respect to a sanction imposed is "extremely limited," and the court must defer to the MSPB's decision "unless the penalty is so harsh or disproportionate to the offense as to constitute an abuse of discretion." *McLaskey v. U.S. Dep't of Energy*, 720 F.2d 583, 586 (9th Cir. 1983). Here, aside from his single conclusory statement, Mr. Karr offers nothing to support an argument that his penalty was harsh or disproportionate to his offense. His argument – and his claim, to the extent there is one – fails.

## V. CONCLUSION

Based on the foregoing, Defendant's motion for partial summary is GRANTED. Summary judgment is entered in favor of Defendant with respect to Mr. Karr's non-discrimination claims (Claim Three).

This disposes of ECF No. 29.

**IT IS SO ORDERED.**

Dated: March 7, 2012

_____
LAUREL BEELER
United States Magistrate Judge