UNITED STATES DISTRICT COURT

Northern District of California

San Francisco

| | |
|---|---|
| RICHARD PAUL KARR, | No. C 11-02207 LB |
| Plaintiff, | **ORDER REGARDING THE PARTIES' MAY 22, 2012 JOINT DISCOVERY LETTER BRIEF** |
| v. | |
| JANET NAPOLITANO, Secretary of the Department of Homeland Security | [Re: ECF No. 37] |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Richard Karr, a United States Customs and Border Protection ("CBP") officer, sued Defendant Janet Napolitano, Secretary of the Department of Homeland Security ("DHS"), after he was demoted and suspended following an investigation concerning his January 8, 2009 request to a subordinate employee to improperly access a computer database. Complaint, ECF No. 1 at 7-10, ¶¶ 36-50.[1] Mr. Karr alleges that his demotion and suspension was discriminatory and retaliatory in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, as amended by the Americans with Disabilities Act of 1990, 12 U.S.C. § 12101, *et seq.*, and the Americans with Disability Act

---

[1] Citations are to the clerk's electronic case file (ECF) with pin cites to the electronic page numbers at the top (as opposed to the bottom) of the page.

Amendments Act of 2008, P.L. 110-325 (Claims One and Two).[2]  A discovery dispute has arisen concerning Defendant's responses to several of Mr. Karr's requests for production of documents ("RFPs").  Upon review of the joint discovery letter brief submitted by Mr. Karr and Defendant on May 22, 2012, the court rules as follows.[2]

## II.  BACKGROUND

A.  Mr. Karr's Previous Positions and Prior Suspensions

Mr. Karr began working for the Immigration and Naturalization Service ("INS") in 1988, and became a supervisor in 1995.  MSPB 0831.[3]  On March 1, 2003, Mr. Karr moved from the INS to the CBP, an agency within the DHS, where he held a similar position that is now called a Supervisory Customs and Border Protection Officer ("SCBPO").  *Id.*

Mr. Karr served three suspensions from 2004 to 2009:

- On May 5, 2004, Mr. Karr served a three-day suspension for: (1) failing to follow instructions directing him not to go outside the chain of command and independently contact representatives of foreign governments; and (2) granting a waiver allowing a foreign national to enter the country without obtaining authorization from his chain of command.  MSPB0495; MSPB0497-98.

- On October 26, 2006, Mr. Karr served a ten-day suspension for again failing to follow

---

[2] Mr. Karr also alleged that his demotion and suspension was retaliatory and constituted an adverse employment action in violation of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1201, *et seq.*, as amended by the Whistleblower Protection Act, 5 U.S.C. § 2302 (Claim Three).  Complaint, ECF No. 1 at 10-14, ¶¶ 51-97.  These claims were reviewed initially by the Merit Systems Protection Board ("MSPB"), which upheld Mr. Karr's demotion and suspension.  *Id.* at 3, ¶ 6.  On March 7, 2012, the court granted Defendant's motion for summary judgment on these non-discrimination claims because there are no issues of material fact that would call into question whether (A) the MSPB's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (B) obtained without procedures required by law, rule, or regulation having been followed, or (C) unsupported by substantial evidence.  3/7/2012 Order, ECF No. 33.

[2] Pursuant to Civil Local Rule 7-1(b), the court finds this matter to be suitable for determination without oral argument.

[3] "MSPB" citations refer to pages of the administrative record that was manually submitted in this case with bates-stamps that ranged from MSPB0001-MSPB1877.

1  instructions directing him not to go outside the chain of command and independently contact
2  foreign government officials.  MSPB0488-89.
3  • On June 10, 2009, Mr. Karr served a 21-day suspension for once again failing to follow
4  instructions directing him not to go outside the chain of command and independently contact
5  foreign government officials.  MSPB0482-83; MSPB0485.

B.  The January 8, 2009 Incident and Mr. Karr's Subsequent Suspension and Demotion

On January 8, 2009, Mr. Karr, then a GS-12 SCBPO in San Francisco, California, telephoned a CBP passenger targeting unit, identified himself by name and title, and asked a lower-ranked officer to perform an improper database search to see if his wife, who is a flight attendant, was onboard a particular flight.  MSPB0285-87; MSPB0433-35; MSPB0441-46.  Mr. Karr did this for his own personal convenience.  MSPB0446 ("I knew I had to coordinate transportation logistics to pick her up at the airport.").  The officer refused to perform this improper search and notified her chain of command, which in turn notified Internal Affairs.  MSPB0443; MSPB0456.

The CBP conducted an investigation into the incident.  MSPB0441-0481.  During that time, Mr. Karr temporarily was reassigned from the San Francisco International Airport Air Mail Facility to the Drawback Unit at the San Francisco Customhouse, and his firearm was removed and his access to system databases was limited.  MSPB0267; MSPB0281; MSPB0419; MSPB0778; MSPB0780; MSPB0795; MSPB1695-96.  These steps are routine in cases involving such misconduct.  MSPB0780.  Mr. Karr continued to receive his GS-12 salary, but he was not permitted to work overtime due to the firearm removal and loss of system access.  MSPB0267; MSPB0281; MSPB0795.

The CBP's Discipline Review Board ("DRB") convened and considered Mr. Karr's case.  MSPB0521-22.  On October 19, 2009, the DRB proposed that Mr. Karr be suspended from duty and pay for 45 days and be demoted from the position of GS-12 supervisory CBP officer to the position of GS-11 journeyman CBP officer.  MSPB0832; MSPB0433.  Mr. Karr provided written and oral replies to the proposed action on December 7, 2009 and December 10, 2009, respectively.  MSPB0832; MSPB0294; MSPB0423-27.  These replies were presented to Seattle Director of Field Operations Michelle James.  On July 6, 2010, Ms. James issued a decision sustaining the charges,

1  agreeing that demotion was warranted, but mitigating the suspension to from 45 to 30 days.

2  MSPB0285-87.  On July 18, 2010, the CBP implemented the demotion and suspension.

3  MSPB0832; MSPB0281; MSPB0283.

4  C.  Mr. Karr's Formal EEO Complaint

5  On July 13, 2009, Mr. Karr contacted a field EEO Manager to seek informal counseling

6  regarding alleged discrimination.  MSPB0776.  The San Francisco EEO Manager, Ms. Katherine

7  McPartland, met with Mr. Karr, confirmed his claims, and, on August 19, 2009, issued a notice

8  informing Mr. Karr of his right to file a formal EEO complaint within 15 days.  MSPB0776-84.

9  On September 6, 2009, Mr. Karr did so.  His EEO employment discrimination complaint alleged

10 that he was subjected to a hostile work environment because of his physical disabilities (sleep

11 apnea/hearing/sight/spine), prior EEO activity, and age, which resulted in several reassignment and

12 suspensions.  *See* MSBP0758-75.[4]

13 On September 22, 2009, Mr. Karr was informed that his EEO complaint was not timely filed

14 because it was not submitted within 15 days of receipt of the notice, as required by 29 C.F.R. §

15 1614.106(b).  MSPB0805-09.  Mr. Karr was provided with an opportunity to explain why the EEO

16 complaint was not timely filed, and on October 6, 2009, he argued that it was timely and stated that

17 "most correspondence requiring a response is usually in business days and does not include

---

[4] According to Mr. Karr, these reassignments and suspensions included the following:

- In November 2007, the CBP reassigned him to the East Bay Station in Oakland.
- In February 2009, the CBP reassigned him to the Air Mail Facility at the San Francisco International Airport, denied him overtime, and denied him the opportunity to attend a Special Emphasis Program event.
- On June 22, 2009, management suspended his employment for 21 days.
- On July 13, 2009, management temporarily relieved him of his supervisory responsibilities, reassigned him to the Customhouse in San Francisco, California, removed his credentials, and denied him overtime.

*See* MSBP0758-75.

C 11-02207 LB
ORDER
4

1  weekends or holidays." MSPB0805-09; MSPB0803-84.[5]

2  On November 3, 2009, Mr. Karr's EEO complaint was dismissed for untimely filing.

3  MSPB0813-14; *see* 29 C.F.R. § 1614.107(a)(2). The dismissal notice was sent via e-mail and

4  advised Mr. Karr that it constituted the final action by the agency and advised him of his appeal

5  rights. MSPB0813-14. Plaintiff did not file any appeal of this final agency decision. *Id.*;

6  MSPB0943-44, Deposition of Richard Karr, 122:6-125:3.

7  D. Mr. Karr's Request for Accommodation

8  On December 10, 2009, Mr. Karr contacted the San Francisco EEO Manager to request

9  accommodation relating to his temporary assignment performing non-supervisory duties at the San

10 Francisco Customhouse. MSPB 0416; MSPB 0857. He asked to be assigned to the San Francisco

11 International Airport Air Mail Facility as a reasonable accommodation for sleep apnea because it is

12 closer to his residence in San Mateo, and he claimed the shorter commute would help him with his

13 sleep. MSPB0416. Because, however, Mr. Karr had limited system access in connection with the

14 pending discipline, the CBP preferred to keep Mr. Karr at the San Francisco Customhouse pending

15 issuance of the final decision on the proposed disciplinary action. *See id*. On December 15, 2009,

16 the CBP engaged in an interactive dialogue with Mr. Karr, and he agreed to remain working at the

17 San Francisco Customhouse while his discipline was pending and to work with his supervisor to

18 devise a modified work schedule to address his sleep concerns. *See id*; see also MSPB0416.

19 E. Mr. Karr's Administrative Appeal to the MSPB

20 On July 23, 2010, Mr. Karr filed an appeal with the MSPB challenging his demotion and 30-day

21 suspension (which began on July 18, 2010). The appeal raised affirmative defenses of:

22 • harmful procedural error;

---

[5] Also, on October 23, 2009, Mr. Karr contacted the San Francisco EEO Manager because he wanted to amend his EEO complaint to include the DRB's October 19, 2009 proposal notice for the demotion and 45-day suspension as an additional discriminatory act. MSPB0429-30. The San Francisco EEO Manager informed him that the proposal did not raise an actionable issue and that he would need to wait until a final decision issued (as it did in July 2010) so he could show actual harm. MSPB0429. Mr. Karr replied that he would consult with an attorney and decide if he wanted to pursue a separate EEO complaint. MSPB 0430; *see also* MSPB0429.

- disparate treatment based on disability discrimination (sleep apnea);
- failure to accommodate his disability of sleep apnea;
- reprisal for engaging in EEO activity;
- retaliation for engaging in whistle-blowing activities; and
- violation of 5 U.S.C. § 2302(b)(12), which prohibits the CBP from taking or failing to take any personnel action that would violate "any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in" 5 U.S.C . § 2301.

*See* MSPB0840-61. After the parties conducted both written discovery and depositions, the matter proceeded to hearing, which lasted three days, and on March 18, 2011, the Administrative Judge ("AJ") issued an Initial Decision affirming the CBP's action. MSPB0830-75. The AJ found that the CBP had proved the charged misconduct, namely, that "it was a misuse of his position for [Mr. Karr], after identifying himself as a supervisor, to request this information from officers who were lower in rank than him, knowing that they would have to access TECS [a sensitive law enforcement database] based on his own personal request, rather than based on an official business reason." MSPB 0839. The AJ found that Mr. Karr made the request for "personal convenience." *Id*. The AJ also found that the CBP met its burden of proving the nexus between the proven misconduct and Mr. Karr's duties and legitimate government interests. MSPB 0840.

The AJ also rejected each of Mr. Karr's affirmative defenses. MSPB0840-61. Specifically, the AJ found the following:

- there were no harmful procedural errors or prohibited personnel practices in the CBP's response to Mr. Karr's discovery requests, the CBP's issuance of what otherwise could have been viewed as two separate adverse actions for one charge, the CBP's reassignment of Mr. Karr to the San Francisco Customhouse pending the issuance of the decision, or the CBP's assignment of a deciding official (Ms. James) from outside Mr. Karr's chain of command (MSPB 0841-46);
- Mr. Karr failed to prove any causal connection between his claimed disabilities and the charged conduct (and, while not making a finding as to whether Mr. Karr was a qualified individual with a disability, the AJ did note that Mr. Karr had received accommodations after requesting them in December of 2009) (MSPB0856);

1 • Mr. Karr failed to meet his burden of proof with respect to the affirmative defense of whistleblowing, noting that "the [CBP's] evidence in support of its action is strong," and finding that, "even in the absence of [Mr. Karr's] alleged disclosures, the [CBP] would have taken the same action," and that Mr. Karr's disclosures were not protected (MSPB0849-51); and

• Mr. Karr had presented "no evidence, aside from his assertions, that his demotion and 30-day suspension were in retaliation for requesting reasonable accommodation" and that Ms. James was credible in stating that she had not retaliated against Mr. Karr ( MSPB086).

The AJ also deferred to the CBP and found the penalty reasonable as the CBP sufficiently and thoughtfully considered the factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981). MSPB 0869. The AJ noted that the CBP had considered mitigating factors to reduce the penalty, and agreed with the CBP's finding that the conduct was "very serious" considering Mr. Karr's position as a supervisor and law enforcement officer. MSPB0863. The AJ also made several adverse credibility findings as to Mr. Karr's claims and testimony. *See* MSPB0863 (finding his claims that "he was not aware" that asking a subordinate for the information about his wife's flight was improper or would likely require querying the TECS database, was "not credible"); MSPB0838 (noting that his "varying characterizations" of an emergency "do not explain why he contacted the RCC"); MSPB0864 (noting that his expression of remorse on the witness stand was "stated unconvincingly").

F. Mr. Karr's Federal Complaint and Current Discovery Disputes

On May 5, 2011, Mr. Karr filed his federal complaint in district court. Complaint, ECF No. 17. The surviving claims are for disability discrimination and retaliation. Mr. Karr requests an injunction: (1) requiring the government to abolish prohibited personnel practices; (2) requiring the government to reinstate him as a SCBPO; and (3) requiring the government to expunge "all negative documentation," including evidence of the four suspensions and the demotion, from his personnel file. *Id.* at 15. He also requests economic damages for lost pay, compensatory damages for emotional distress, attorney's fees and costs, and any other relief the court may deem just and proper. *Id.* at 15-16.

On May 22, 2012, the parties submitted a joint discovery letter brief describing three disputes,

each of which is described in turn below.  Joint Letter, ECF No. 37.

## III.  LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(c), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.  However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C).

In addition, upon a showing of "good cause," a court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery by, among other things: "(A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; [or] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . . ."  Fed. R. Civ. P. 26(c).  The party seeking a protective order has the burden of showing that the protection is warranted.  *In re Violation of Rule 28(D)*, 635 F.3d at 1357.  Generally, good cause requires the moving party to show that specific prejudice or harm will result if the protective order is not issued.  *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 826 (9th Cir. 2004).  And, in this context, the courts administer a balancing test of the conflicting interests between the protection of Rule 26(c) of the Federal Rules of Civil Procedure and the broad mandate of the admissibility of information in discovery conferred by Rule 26(b)(1).  *See*, *e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992).

## IV.  DISCUSSION

A. Defendant's Untimely Discovery Responses

Throughout the parties' joint discovery letter brief, Mr. Karr argues that Defendants waived its objections to his RFPs because Defendant did not timely respond to them. Defendant's responses were due by April 23, 2012, but she did not serve them until April 27, 2012. Joint Letter, ECF No. 37 at 1 n.3.

The party to whom an interrogatory or request for production is directed must respond in writing within 30 days after being served. Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A). Failure to object to discovery requests within the time required constitutes a waiver of any objection. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). Although Rule 34 does not expressly provide for any relief from a waiver of objections as does Rule 33, courts have granted such relief upon a showing of good cause. *See Batts v. County of Santa Clara*, No. C08-00286 JW (HRL), 2010 WL 1027990, at *1 (N.D. Cal. Mar. 18, 2010) ("Batts had no reasonable basis to believe that she had a two-week extension of time in which to serve her responses. At the same time, however, this court finds that a waiver of all objections would be a draconian result that is not warranted under the circumstances presented here. Accordingly, plaintiff's objections will not be deemed waived."); *Kanawi v. Bechtel Corp.*, No. C 06-05566 CRB (EDL), 2008 WL 4642168, at *1 (N.D. Cal. Oct. 17, 2008) ("Because the calendaring error resulted in a delay of only one day, and Fremont has not shown that it suffered prejudice from that short delay, the Court concludes that Plaintiffs have not waived their objections."); *see also Brown v. Stroud*, No. C-08-02348-VRW (DMR), 2010 WL 3339524, at *1-2 (N.D. Cal. Aug. 24, 2010); *Blumenthal v. Drudge*, 186 F.R.D. 236, 240 (D.D.C. 1999). In exercising its discretion, a court should evaluate relevant factors, including: (1) the length of the delay; (2) the reason for the delay; (3) the existence of bad faith; (4) the prejudice to the party seeking the disclosure; (5) the nature of the request; and (6) the harshness of imposing the waiver. *Hall v. Sullivan*, 231 F.R.D. 468, 474 (D.Md. 2005).

Here, Defendant's responses to Mr. Karr's RFPs were five days late, which is not long when compared to the many months the parties have had for discovery. Defendant says that the delay was caused by a simple calendaring error, and Mr. Karr does not provide the court with any reason to doubt Defendant's explanation. Perhaps most significantly, Mr. Karr has not expressed that he has

been prejudiced in any way by the delay, and the court does not see how he would have been. And without any prejudice, the court believes that a complete waiver of Defendant's objections would be a disproportionately harsh result. Accordingly, the court finds good cause to excuse Defendant's five-day delay in responding to Mr. Karr's RFPs.

B. Mr. Karr's RFP No. 2

The first discovery dispute concerns Defendant's response to Mr. Karr's RFP No. 2. *See* Joint Letter, ECF No. 37 at 2-3. That request asks Defendant to "[p]lease produce EACH DOCUMENT contained in the Official Personnel Files (OPF), disciplinary files, performance files, investigatory files and promotion files PERTAINING TO" the following eight individuals: (1) Mr. Karr; (2) Patrick Burke; (3) Sue Fiust; (4) David Salazar; (5) Richard Vigna; (6) Michelle James; (7) Hyang Sock Farrell; and (8) Jerel Datoc. *Id*. at 2.[6] Defendant objected to the request on a number of grounds, including that it is overly broad, unduly burdensome, violates the individuals' privacy rights, and is not calculated to lead to the discovery of admissible evidence. *Id*. Nevertheless, Defendant responded that it has already produced to Mr. Karr the administrative record in this case and that it also will produce Mr. Karr's OPF file, EEO file, and local personal documents. *Id*. Mr. Karr says that Defendant has not produced any documents for the other nine individuals. *Id*.

Mr. Karr argues that Defendant's production is insufficient and not fully responsive to his request. *Id*. He says that the documents pertaining to Mr. Salazar (who was a member of the DRB that recommended that Mr. Karr be suspended and demoted) and Ms. James, (who issued a July 6, 2010 decision sustaining the DRB's recommendation[7], "are relevant to their credibility as decision makers." *Id*. And he says that he needs the documents pertaining to Mr. Burke, Ms. Fiust, Mr. Farrell, and Mr. Datoc "to prove disparate treatment of [Mr. Karr] in regards to his punishment." *Id*. (citing *Ladson v. Ultra East Parking Corp.*, 164 F.R.D. 376, 378 (S.D.N.Y. 1996) (ordering

---

[6] Mr. Karr's RFP No. 2 also requests documents to two other individuals: Erin Kobashigawa and Marisa Peinado. Joint Letter, ECF No. 37 at 2. At the parties meet and confer session, Mr. Karr conceded that documents pertaining to Ms. Kobashigawa and Ms. Peinado are not necessary, and he withdrew his request for their documents. *Id*.

[7] Ms. James also mitigated the proposed suspension from 45 to 30 days. MSPB0285-87.

C 11-02207 LB
ORDER
10

1  defendants to produce the personnel files of employees similarly situated to a plaintiff alleging
2  disparate treatment)).

3  The documents pertaining to Mr. Salazar, Ms. James, and Mr. Burke are not relevant. As
4  Defendant points out, Mr. Karr has already admitted that he made the January 8, 2009 request at
5  issue here, and the court has granted summary judgment against Mr. Karr with respect to his
6  challenge of the disciplinary action recommended by Mr. Salazar and sustained by Ms. James. Joint
7  Letter, ECF No. 37 at 3; *see* 3/7/2012 Order, ECF No. 33. Defendant also argues that Mr. Karr was
8  not similarly situated to Mr. Burke, and the court agrees. Generally, in the Ninth Circuit,
9  "individuals are similarly situated when they have similar jobs and display similar conduct."
10 *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Defendant states that Mr.
11 Burke held a very different job from Mr. Karr, and Mr. Karr does not even attempt address this
12 claim in his section of the joint discovery letter brief. *See* Joint Letter, ECF No. 37 at 2-3.

13 Mr. Karr also has not shown that the documents pertaining to Ms. Fiust, Mr. Farrell, and Mr.
14 Datoc are relevant. Mr. Farrell, Defendant states, has never been accused of, investigated for, or
15 charged with misconduct, and Mr. Karr does not suggest otherwise. *Id*. And while Defendant
16 admits that Ms. Fiust and Mr. Datoc were Mr. Karr's co-workers and that each had been disciplined,
17 Defendant also points out that they are not similarly situated to Mr. Karr because Mr. Karr had been
18 disciplined twice before the discipline at issue here. *Id*. Mr. Karr does not address this point in his
19 section of the joint discovery letter brief. *See id*. at 2.

20 Nevertheless, Defendant has agreed to produce to Mr. Karr the disciplinary proposal and
21 decision letters for Ms. Fiust and the redacted disciplinary proposal and decision letters for Mr.
22 Datoc. Defendant shall do so. Aside from this, though, Defendant need not respond further to Mr.
23 Karr's RFP No. 2.

24 C.  Mr. Karr's RFP Nos. 5 and 6

25 The second discovery dispute concerns Defendant's responses to Mr. Karr's RFP Nos. 5 and 6.
26 *Id*. at 3-4. Those requests ask Defendant to "please produce EACH DOCUMENT showing" "the
27 investigation of," or "disciplinary actions taken against," "any DHS employees, under the
28 management of Director, Field Operations, Richard Vigna from January 2004 to present." *Id*. at 3.

C 11-02207 LB
ORDER
11

1  He says that he needs these documents "to prove his discrimination/retaliation claims by showing
2  that [he] was disciplined more harshly than similarly situated coworkers." *Id*. Defendant objected
3  to the requests on a number of grounds, including that they are overly broad, unduly burdensome,
4  violate the individuals' privacy rights, and are not calculated to lead to the discovery of admissible
5  evidence. *Id*. Nevertheless, Defendant responded that it "has already produced the relevant 'like
6  and similar' documents, which are part of the administrative record in this action." *Id*. At a meet
7  and confer session, Mr. Karr offered to limit the requests to documents concerning only CBP
8  "officers, supervisors and managers" and also stated that he would consider further limiting the
9  requests to certain types of misconduct (but only if Defendant would first provide him with a list of
10 the various types of misconduct, which Defendant has not done). *Id*.

11     As he did in the first discovery dispute, Mr. Karr argues that Defendant's production is
12 insufficient and not fully responsive to his request. *Id*. Defendant argues that responding fully to his
13 requests is too burdensome and pointless. *Id*. at 4. There were over 850 CBP under Mr. Vigna's
14 authority, and many, if not most, of them did not have same job or supervisors, or even work in the
15 same location, as Mr. Karr. *Id*. And even if they did, a search of their personnel records for any
16 type of discipline – as opposed to a search for instances of misuse of position, which Mr. Karr was
17 disciplined for – would yield information that would not be relevant in this case. *Id*. Recognizing
18 Mr. Karr's need for relevant information concerning misuse of position charges, Defendant, during
19 the administrative proceedings, gave Mr. Karr copies of disciplinary proposal and decision letters
20 relating to any CBP employees within the U.S. who had been disciplined for misuse of position. *Id*.
21 During the current dispute, Defendant conducted the same search once again, but no new instances
22 of misuse of position discipline were found. *Id*.

23     The court agrees with Defendant and finds her efforts in response to the RFPs to be sufficient
24 (especially in light of Mr. Karr's failure to directly address Defendant's arguments or efforts in the
25 parties' joint discovery letter). Mr. Karr's request is vastly overbroad, and Defendant conducted a
26 reasonable search for other misuse of position disciplinary cases and provided the results to Mr.
27 Karr. As such, Defendant need not respond further to Mr. Karr's RFP Nos. 5 and 6.

28 D.  Mr. Karr's RFP Nos. 21-26 and 29-32

1  The third discovery dispute concerns Defendant's responses to Mr. Karr's RFP Nos. 21-26 and
2  29-32. *Id*. at 4-5. These requests ask Defendant to produce "all emails, letters, memoranda, notes
3  and other documents sent to or from" Leticia Romero, John Leyden, Nat Aycox, Daniel Vigna,
4  Richard Vigna, Susan Mitchell, James Farrell, or Robert Baldocchi since January 1, 2004 "that
5  mention [Mr. Karr] directly or indirectly, or are from or addressed to [Mr. Karr] directly or
6  indirectly." *Id*. at 4. They also ask for the same documents sent to or from Katherine McPartland or
7  Michelle James since January 1, 2009. *Id*. He says that these documents "are relevant to whether
8  these decision makers and managers over [him] expressed or evidenced bias or retaliatory animus
9  concerning [him] leading up to the disciplinary actions that are at issue in this case." *Id*.

10  Defendant objected to these requests on a number of grounds, including that they are overly
11  broad, unduly burdensome, violate the individuals' privacy rights, and are not calculated to lead to
12  the discovery of admissible evidence. *Id*. Nevertheless, Defendant offered to meet and confer with
13  Mr. Karr's counsel regarding email searches. *Id*. In the parties' joint discovery letter, Defendants
14  explains that it is exceedingly difficult (and probably prohibitively expensive) to retrieve most of the
15  emails that Mr. Karr requests. *Id*. at 5. The CBP's emails from roughly 2004 through the middle of
16  2008 are stored in its legacy electronic e-mail system and archived on magnetic tape media. *Id*.
17  There are over 1 billion email records within that system. *Id*.

18  And even if the email were more easily accessible, the court does not believe that all of them are
19  relevant. As Defendant correctly points out, Mr. Karr's disability discrimination and retaliation
20  claims relate only to his 2010 demotion and suspension (resulting from his misuse of position on
21  January 8, 2009) and his September 6, 2009 EEO complaint. *Id*.[8] With that in mind, Defendant has
22  offered to produce to Mr. Karr all of <u>his</u> emails from October 16, 2008 to May 1, 2012 as well as
23  responsive emails of Ms. James, Mr. Salazar, and Ms. McPartland (the former EEO official who
24  handled Mr. Karr's 2009 EEO complaint) from January 1, 2009 to May 1, 2012. *Id*.

25  The court believes Defendant's compromise to be both reasonable and sufficient. Mr. Karr

---

[8] Defendant argues that Mr. Karr's September 6, 2009 EEO complaint cannot relate to his claims here because the complaint was untimely filed. Joint Letter, ECF No. 37 at 5 n.11. While this may or may not true, that issue is not before the court at this time.

C 11-02207 LB
ORDER
13

should have the responsive emails of Ms. James, Mr. Salazar, and Ms. McPartland during the period relevant to this case. This would be accomplished by his receiving their responsive emails from January 1, 2009 to May 1, 2012. Mr. Karr cites *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999) for the point that untimely claims can serve as relevant background evidence to put timely claims in context, and thus he should have access to emails going back to 2004, but the point stated in that case was made with respect to claims arising under the "continuing violations" doctrine, which is not relevant here.[9] Accordingly, Defendant shall provide Mr. Karr with the emails it has agreed to provide, and it need not respond further to Mr. Karr's RFP Nos. 21-26 and 29-32.

## V.  CONCLUSION

Based on the foregoing, Defendant shall respond to Mr. Karr's RFPs as described above.

This disposes of ECF No. 37.

**IT IS SO ORDERED.**

Dated: May 31, 2012

_____
LAUREL BEELER
United States Magistrate Judge

---

[9] Mr. Karr suggests that his 2005 EEO complaint supports the application of this doctrine, but that complaint was for age discrimination, which is not at issue in this case. Joint Letter, ECF No. 37 at 5 n.11.