UNITED STATES DISTRICT COURT

Northern District of California

San Francisco

| | |
|---|---|
| RICHARD PAUL KARR, | No. C 11-02207 LB |
| Plaintiff, | **ORDER REGARDING THE PARTIES' JUNE 4, 2012 JOINT DISCOVERY LETTER BRIEF** |
| v. | |
| JANET NAPOLITANO, Secretary of the Department of Homeland Security | [Re: ECF No. 37] |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Richard Karr, a United States Customs and Border Protection ("CBP") officer, sued Defendant Janet Napolitano, Secretary of the Department of Homeland Security ("DHS"), after he was demoted and suspended following an investigation concerning his January 8, 2009 request to a subordinate employee to improperly access a computer database. Complaint, ECF No. 1 at 7-10, ¶¶ 36-50.[1] Mr. Karr alleges that his demotion and suspension was discriminatory and retaliatory in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, as amended by the Americans with Disabilities Act of 1990, 12 U.S.C. § 12101, *et seq.*, and the Americans with Disability Act

---

[1] Citations are to the clerk's electronic case file (ECF) with pin cites to the electronic page numbers at the top (as opposed to the bottom) of the page.

Amendments Act of 2008, P.L. 110-325 (Claims One and Two).[2] A discovery dispute has arisen concerning the depositions of non-party Hyang Sock Farrell and Defendant's Rule 30(b)(6) deponent. Upon review of the joint discovery letter brief submitted by Mr. Karr and Defendant on June 4, 2012, the court rules as follows.[2]

## II. BACKGROUND

A. Mr. Karr's Previous Positions and Prior Suspensions

Mr. Karr began working for the Immigration and Naturalization Service ("INS") in 1988, and became a supervisor in 1995. MSPB 0831.[3] On March 1, 2003, Mr. Karr moved from the INS to the CBP, an agency within the DHS, where he held a similar position that is now called a Supervisory Customs and Border Protection Officer ("SCBPO"). *Id.*

Mr. Karr served three suspensions from 2004 to 2009:

- On May 5, 2004, Mr. Karr served a three-day suspension for: (1) failing to follow instructions directing him not to go outside the chain of command and independently contact representatives of foreign governments; and (2) granting a waiver allowing a foreign national to enter the country without obtaining authorization from his chain of command. MSPB0495; MSPB0497-98.

- On October 26, 2006, Mr. Karr served a ten-day suspension for again failing to follow

---

[2] Mr. Karr also alleged that his demotion and suspension was retaliatory and constituted an adverse employment action in violation of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1201, *et seq.*, as amended by the Whistleblower Protection Act, 5 U.S.C. § 2302 (Claim Three). Complaint, ECF No. 1 at 10-14, ¶¶ 51-97. These claims were reviewed initially by the Merit Systems Protection Board ("MSPB"), which upheld Mr. Karr's demotion and suspension. *Id.* at 3, ¶ 6. On March 7, 2012, the court granted Defendant's motion for summary judgment on these non-discrimination claims because there are no issues of material fact that would call into question whether (A) the MSPB's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (B) obtained without procedures required by law, rule, or regulation having been followed, or (C) unsupported by substantial evidence. 3/7/2012 Order, ECF No. 33.

[2] Pursuant to Civil Local Rule 7-1(b), the court finds this matter to be suitable for determination without oral argument.

[3] "MSPB" citations refer to pages of the administrative record that was manually submitted in this case with bates-stamps that ranged from MSPB0001-MSPB1877.

C 11-02207 LB
ORDER
2

1  instructions directing him not to go outside the chain of command and independently contact
2  foreign government officials. MSPB0488-89.
3  • On June 10, 2009, Mr. Karr served a 21-day suspension for once again failing to follow
4  instructions directing him not to go outside the chain of command and independently contact
5  foreign government officials. MSPB0482-83; MSPB0485.

B. The January 8, 2009 Incident and Mr. Karr's Subsequent Suspension and Demotion

On January 8, 2009, Mr. Karr, then a GS-12 SCBPO in San Francisco, California, telephoned a CBP passenger targeting unit, identified himself by name and title, and asked a lower-ranked officer to perform an improper database search to see if his wife, who is a flight attendant, was onboard a particular flight. MSPB0285-87; MSPB0433-35; MSPB0441-46. Mr. Karr did this for his own personal convenience. MSPB0446 ("I knew I had to coordinate transportation logistics to pick her up at the airport."). The officer refused to perform this improper search and notified her chain of command, which in turn notified Internal Affairs. MSPB0443; MSPB0456.

The CBP conducted an investigation into the incident. MSPB0441-0481. During that time, Mr. Karr temporarily was reassigned from the San Francisco International Airport Air Mail Facility to the Drawback Unit at the San Francisco Customhouse, and his firearm was removed and his access to system databases was limited. MSPB0267; MSPB0281; MSPB0419; MSPB0778; MSPB0780; MSPB0795; MSPB1695-96. These steps are routine in cases involving such misconduct. MSPB0780. Mr. Karr continued to receive his GS-12 salary, but he was not permitted to work overtime due to the firearm removal and loss of system access. MSPB0267; MSPB0281; MSPB0795.

The CBP's Discipline Review Board ("DRB") convened and considered Mr. Karr's case. MSPB0521-22. On October 19, 2009, the DRB proposed that Mr. Karr be suspended from duty and pay for 45 days and be demoted from the position of GS-12 supervisory CBP officer to the position of GS-11 journeyman CBP officer. MSPB0832; MSPB0433. Mr. Karr provided written and oral replies to the proposed action on December 7, 2009 and December 10, 2009, respectively. MSPB0832; MSPB0294; MSPB0423-27. These replies were presented to Seattle Director of Field Operations Michelle James. On July 6, 2010, Ms. James issued a decision sustaining the charges,

agreeing that demotion was warranted, but mitigating the suspension to from 45 to 30 days. MSPB0285-87. On July 18, 2010, the CBP implemented the demotion and suspension. MSPB0832; MSPB0281; MSPB0283.

C.  Mr. Karr's Formal EEO Complaint

On July 13, 2009, Mr. Karr contacted a field EEO Manager to seek informal counseling regarding alleged discrimination. MSPB0776. The San Francisco EEO Manager, Ms. Katherine McPartland, met with Mr. Karr, confirmed his claims, and, on August 19, 2009, issued a notice informing Mr. Karr of his right to file a formal EEO complaint within 15 days. MSPB0776-84.

On September 6, 2009, Mr. Karr did so. His EEO employment discrimination complaint alleged that he was subjected to a hostile work environment because of his physical disabilities (sleep apnea/hearing/sight/spine), prior EEO activity, and age, which resulted in several reassignment and suspensions. *See* MSBP0758-75.[4]

On September 22, 2009, Mr. Karr was informed that his EEO complaint was not timely filed because it was not submitted within 15 days of receipt of the notice, as required by 29 C.F.R. § 1614.106(b). MSPB0805-09. Mr. Karr was provided with an opportunity to explain why the EEO complaint was not timely filed, and on October 6, 2009, he argued that it was timely and stated that "most correspondence requiring a response is usually in business days and does not include

---

[4] According to Mr. Karr, these reassignments and suspensions included the following:

- In November 2007, the CBP reassigned him to the East Bay Station in Oakland.
- In February 2009, the CBP reassigned him to the Air Mail Facility at the San Francisco International Airport, denied him overtime, and denied him the opportunity to attend a Special Emphasis Program event.
- On June 22, 2009, management suspended his employment for 21 days.
- On July 13, 2009, management temporarily relieved him of his supervisory responsibilities, reassigned him to the Customhouse in San Francisco, California, removed his credentials, and denied him overtime.

*See* MSBP0758-75.

C 11-02207 LB
ORDER
4

1 weekends or holidays." MSPB0805-09; MSPB0803-84.[5]

2 On November 3, 2009, Mr. Karr's EEO complaint was dismissed for untimely filing.

3 MSPB0813-14; *see* 29 C.F.R. § 1614.107(a)(2). The dismissal notice was sent via e-mail and

4 advised Mr. Karr that it constituted the final action by the agency and advised him of his appeal

5 rights. MSPB0813-14. Plaintiff did not file any appeal of this final agency decision. *Id*.;

6 MSPB0943-44, Deposition of Richard Karr, 122:6-125:3.

D. Mr. Karr's Request for Accommodation

On December 10, 2009, Mr. Karr contacted the San Francisco EEO Manager to request accommodation relating to his temporary assignment performing non-supervisory duties at the San Francisco Customhouse. MSPB 0416; MSPB 0857. He asked to be assigned to the San Francisco International Airport Air Mail Facility as a reasonable accommodation for sleep apnea because it is closer to his residence in San Mateo, and he claimed the shorter commute would help him with his sleep. MSPB0416. Because, however, Mr. Karr had limited system access in connection with the pending discipline, the CBP preferred to keep Mr. Karr at the San Francisco Customhouse pending issuance of the final decision on the proposed disciplinary action. *See id*. On December 15, 2009, the CBP engaged in an interactive dialogue with Mr. Karr, and he agreed to remain working at the San Francisco Customhouse while his discipline was pending and to work with his supervisor to devise a modified work schedule to address his sleep concerns. *See id*; see also MSPB0416.

E. Mr. Karr's Administrative Appeal to the MSPB

On July 23, 2010, Mr. Karr filed an appeal with the MSPB challenging his demotion and 30-day suspension (which began on July 18, 2010). The appeal raised affirmative defenses of:

- harmful procedural error;

---

[5] Also, on October 23, 2009, Mr. Karr contacted the San Francisco EEO Manager because he wanted to amend his EEO complaint to include the DRB's October 19, 2009 proposal notice for the demotion and 45-day suspension as an additional discriminatory act. MSPB0429-30. The San Francisco EEO Manager informed him that the proposal did not raise an actionable issue and that he would need to wait until a final decision issued (as it did in July 2010) so he could show actual harm. MSPB0429. Mr. Karr replied that he would consult with an attorney and decide if he wanted to pursue a separate EEO complaint. MSPB 0430; *see also* MSPB0429.

1. • disparate treatment based on disability discrimination (sleep apnea);
2. • failure to accommodate his disability of sleep apnea;
3. • reprisal for engaging in EEO activity;
4. • retaliation for engaging in whistle-blowing activities; and
5. • violation of 5 U.S.C. § 2302(b)(12), which prohibits the CBP from taking or failing to take any personnel action that would violate "any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in" 5 U.S.C . § 2301.

*See* MSPB0840-61. After the parties conducted both written discovery and depositions, the matter proceeded to hearing, which lasted three days, and on March 18, 2011, the Administrative Judge ("AJ") issued an Initial Decision affirming the CBP's action. MSPB0830-75. The AJ found that the CBP had proved the charged misconduct, namely, that "it was a misuse of his position for [Mr. Karr], after identifying himself as a supervisor, to request this information from officers who were lower in rank than him, knowing that they would have to access TECS [a sensitive law enforcement database] based on his own personal request, rather than based on an official business reason." MSPB 0839. The AJ found that Mr. Karr made the request for "personal convenience." *Id*. The AJ also found that the CBP met its burden of proving the nexus between the proven misconduct and Mr. Karr's duties and legitimate government interests. MSPB 0840.

The AJ also rejected each of Mr. Karr's affirmative defenses. MSPB0840-61. Specifically, the AJ found the following:

- there were no harmful procedural errors or prohibited personnel practices in the CBP's response to Mr. Karr's discovery requests, the CBP's issuance of what otherwise could have been viewed as two separate adverse actions for one charge, the CBP's reassignment of Mr. Karr to the San Francisco Customhouse pending the issuance of the decision, or the CBP's assignment of a deciding official (Ms. James) from outside Mr. Karr's chain of command (MSPB 0841-46);
- Mr. Karr failed to prove any causal connection between his claimed disabilities and the charged conduct (and, while not making a finding as to whether Mr. Karr was a qualified individual with a disability, the AJ did note that Mr. Karr had received accommodations after requesting them in December of 2009) (MSPB0856);

1. • Mr. Karr failed to meet his burden of proof with respect to the affirmative defense of whistleblowing, noting that "the [CBP's] evidence in support of its action is strong," and finding that, "even in the absence of [Mr. Karr's] alleged disclosures, the [CBP] would have taken the same action," and that Mr. Karr's disclosures were not protected (MSPB0849-51); and

2. • Mr. Karr had presented "no evidence, aside from his assertions, that his demotion and 30-day suspension were in retaliation for requesting reasonable accommodation" and that Ms. James was credible in stating that she had not retaliated against Mr. Karr ( MSPB086).

The AJ also deferred to the CBP and found the penalty reasonable as the CBP sufficiently and thoughtfully considered the factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981). MSPB 0869. The AJ noted that the CBP had considered mitigating factors to reduce the penalty, and agreed with the CBP's finding that the conduct was "very serious" considering Mr. Karr's position as a supervisor and law enforcement officer. MSPB0863. The AJ also made several adverse credibility findings as to Mr. Karr's claims and testimony. *See* MSPB0863 (finding his claims that "he was not aware" that asking a subordinate for the information about his wife's flight was improper or would likely require querying the TECS database, was "not credible"); MSPB0838 (noting that his "varying characterizations" of an emergency "do not explain why he contacted the RCC"); MSPB0864 (noting that his expression of remorse on the witness stand was "stated unconvincingly").

F. Mr. Karr's Federal Complaint and Current Discovery Dispute

On May 5, 2011, Mr. Karr filed his federal complaint in district court. Complaint, ECF No. 17. The surviving claims are for disability discrimination and retaliation. Mr. Karr requests an injunction: (1) requiring the government to abolish prohibited personnel practices; (2) requiring the government to reinstate him as a SCBPO; and (3) requiring the government to expunge "all negative documentation," including evidence of the four suspensions and the demotion, from his personnel file. *Id*. at 15. He also requests economic damages for lost pay, compensatory damages for emotional distress, attorney's fees and costs, and any other relief the court may deem just and proper. *Id*. at 15-16.

On June 4, 2012, the parties submitted a joint discovery letter brief concerning the depositions of

Ms. Hyang Sock Farrell (one of Mr. Karr's coworkers) and Defendant's Rule 30(b)(6) deponent. 6/4/2012 Joint Letter, ECF No. 42.

### III. LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(c), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

In addition, upon a showing of "good cause," a court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery by, among other things: "(A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; [or] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . . ." Fed. R. Civ. P. 26(c). The party seeking a protective order has the burden of showing that the protection is warranted. *In re Violation of Rule 28(D)*, 635 F.3d at 1357. Generally, good cause requires the moving party to show that specific prejudice or harm will result if the protective order is not issued. *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 826 (9th Cir. 2004). And, in this context, the courts administer a balancing test of the conflicting interests between the protection of Rule 26(c) of the Federal Rules of Civil Procedure and the broad mandate of the admissibility of information in discovery conferred by Rule 26(b)(1). *See*, *e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992).

## IV. DISCUSSION

A. The Deposition of Ms. Farrell

The court addresses Ms. Farrell's deposition first. In the parties' May 22, 2012 joint discovery letter brief, Defendant stated that it "has no record that [Ms. Farrell]," one of Mr. Karr's "coworkers," "has been accused of misconduct or investigated or charged with any misconduct." 5/22/2012 Joint Letter, ECF No. 37 at 2, 3. Mr. Karr did not challenge Defendant's description as inaccurate or unclear. *See generally id.* Because the court understood Defendant's statement to mean that there is no evidence, or even a suggestion, that Ms. Farrell ever committed misconduct (and because Mr. Karr said nothing in this regard), the court found that Mr. Karr had not shown that documents pertaining to Ms. Farrell are relevant to this action. 5/31/2012 Order, ECF No. 41 at 11. Accordingly, the court ruled that Defendant did not need to produce documents related to her. *Id*.

Now, though, Mr. Karr states in the parties' June 4, 2012 joint letter that he "has information" that "in 2010 or 2011" Ms. Farrell may have abandoned her post without permission but was never charged within misconduct or disciplined. 6/4/2012 Joint Letter, ECF No. 42 at 5. This, Mr. Karr argues, is an example of an employee similarly situated to Mr. Karr who was treated much more leniently than he was (i.e., she was not investigated or charged for misconduct but he was). *Id*. at 4-5. Presumably to find out more about her possible misconduct and its consequences, Mr. Karr wants to depose her.

Defendant argues that Ms. Farrell's deposition is inappropriate for two reasons. *Id*. at 5. First, Defendant argues that Ms. Farrell is not similarly situated to Mr. Karr simply because she holds different position than Mr. Karr did at the time of his discipline. *Id*. The court found a similar argument persuasive in its prior order (Defendant argued that Mr. Patrick Burke held "a different position[] with [a] very different job description[]" than Mr. Karr), but in that instance, Mr. Karr did not challenge Defendant's argument in any way. *See* 5/22/2012 Joint Letter, ECF No. 37 at 2-3; 5/31/2012 Order, ECF No. 41 at 11. Here, Defendant's language is not nearly so strong ("Ms. Farrell is a CBP Officer, a non-supervisory position, with different duties and responsibilities than [Mr. Karr] had as a Supervisory CBP Officer."), and Mr. Karr disputes that this means that Ms. Farrell is not similarly situated to Mr. Karr. *See* 6/4/2012 Joint Letter, ECF No. 42 at 5. Indeed, the

1 court's previously-cited authority suggests that a different position, alone, is not enough to establish
2 that an employee is not similarly situated to another. *See Vasquez v. County of Los Angeles*, 349
3 F.3d 634, 641 (9th Cir. 2003) (Generally, in the Ninth Circuit, "individuals are similarly situated
4 when they have <u>similar</u> jobs and display similar conduct.") (emphasis added). The court appreciates
5 that Ms. Farrell apparently has different job responsibilities than Mr. Karr does (checking cargo
6 versus the kind of supervisory job that allows contact with representatives of foreign countries or the
7 granting waivers to foreign nationals to enter the country), but she is a "CBP Officer," and that does
8 not necessarily render her "not similarly situated" to a "CBP Supervisor" under *Vasquez*.

9 Second, Defendant argues that, because of the court's 5/31/2012 Order, Ms. Farrell's testimony
10 is not relevant to this action. 6/4/2012 Joint Letter, ECF No. 42 at 5. The court does not agree. As
11 noted above, the court previously understood (or perhaps misunderstood) the situation to be that
12 there was no suggestion that Ms. Farrell had ever committed misconduct, not that she simply had not
13 been formally accused, investigated, or charged with misconduct. That is why the court found
14 documents pertaining to her to be irrelevant. In light of Mr. Karr's statement that he has information
15 otherwise (and in light of the court's new understanding of the situation), the court finds that her
16 testimony is relevant—at least under the broad definition of relevance under the discovery
17 rules—and that Mr. Karr should get to depose her. The court also notes that Defendant offered on
18 May 25, 2012 and May 30, 2012 (i.e., prior to the court's 5/31/2012 Order) to produce Ms. Farrell
19 for deposition. 6/4/2012 Joint Letter, ECF No. 42 at 2. Again, it was part of an offered
20 compromise, but given the *Vasquez* standard and the court's previous misunderstanding, the court
21 orders Ms. Farrell's deposition.

22 Accordingly, Defendant shall produce Ms. Farrell for deposition within 14 days from the date of
23 this order. The parties shall meet and confer to agree upon a mutually-convenient date, time, and
24 location.

25 B. Defendant's Rule 30(b)(6) Deponent

26 The court next addresses the Rule 30(b)(6) deposition. Mr. Karr's revised deposition notice
27 states that he seeks to depose:

28   Defendant's employee(s) or representative(s) who is (are) most knowledgeable about

the investigation of allegations of misconduct (except for misconduct concerning time and attendance, or alcohol or drug issues, and those involving incidents that led to personal injury or property damage) and disciplinary actions taken or not taken against Customs and Border Protection officers, supervisors and managers under Director, Field Operations Richard Vigna since January 2004, including, but not limited to those listed below regarding the referenced incident or incidents:

a. The incidents in which Patrick Burke was accused of (a) using CBP cameras at San Francisco International Airport to zoom in on women's body parts in or about 2006-2007; (b) asking CBP personnel at San Francisco International Airport to pick up or escort his wife in or about 2005-2009; and (c) showing a photo of a penis to CBP employee Doreen Johnson in or about 2009-2010.

b. The incident in which Sue Fiust was accused of asking CBP employee Wendy Coleman to change a TECS report to include incorrect information about the search of a male passenger in or about 2006-2007;

c. The incident in which Hyang Sock Farrell was accused of improperly abandoning her job of inspecting parcels at the West Bay Cargo Area in or about 2010-2011;

d. The incident in which, in or about 2009-2010, CBP employee Jerel Datoc was found to have illegally modified a handgun to become a semi-automatic handgun and/or improperly filed down the handgun's serial number; and

e. The incident in which Troy Blackburn was alleged to have stolen up to $100,000 at San Francisco International Airport in or about 2011-2012.

6/4/2012 Joint Letter, ECF No. 42 at 2-3.

Defendant objects to producing a Rule 30(b)(6) deponent on these topics, which it contends are overly broad in light of the court's 5/31/2012 Order. The court mostly agrees with this position. In its prior order, the court found that Mr. Burke was not similarly situated to Mr. Karr because, according to Defendant's unchallenged description, Mr. Burke held "a different position[] with [a] very different job description[]" than Mr. Karr. 5/31/2012 Order, ECF No. 41 at 11 (citing *Vasquez*, 349 F.3d at 641). The court also found that Ms. Fiust and Mr. Datoc were not similarly situated to Mr. Karr because, again according to Defendant's unchallenged description, Mr. Karr had been disciplined twice before the discipline at issue here. *Id*. Because of these previous findings, it makes sense to preclude Mr. Karr from seeking to depose a Rule 30(b)(6) deponent about individuals who are not relevant to this action.

It is a different answer with respect to Ms. Farrell. Given the new clarity surrounding Ms. Farrell and the court's decision to allow Mr. Karr to depose her, the court believes that it makes sense to allow Mr. Karr to depose a Rule 30(b)(6) deponent about her as well. (The court notes,

though, that the deponent may or may not know anything about her situation, given Defendant's previous representation that she had never been formally accused, investigated, or charged with misconduct.)

The court also finds Defendant's proposed compromises to be reasonable and appropriate. During the parties' meet and confer efforts, Defendant offered to produce a Rule 30(b)(6) deponent to testify regarding "all formal discipline (excluding letters of reprimand) against Supervisory CBP Officers (not Chiefs) in the SFO Field Office during the time Richard Vigna served as the DFO." 6/4/2012 Joint Letter, ECF No. 42 at 4. The deponent would also "be prepared to talk about the charges, the proposed discipline, and the decision[s] that issued," but would not discuss "the investigations." *Id*. Defendant also offered to produce to Mr. Karr "redacted copies of the proposal and decision letters related to all formal discipline (excluding letters of reprimand) against Supervisory CBP Officers (not against Chiefs or non-supervisory Officers) in the SFO Field Office during the time Richard Vigna served as the DFO." *Id*. These letters "will indicate the charges, the proposed discipline, the actual discipline, and the proposing and deciding officials." *Id*.

Accordingly, Defendant shall produce the redacted proposal and decision letters mentioned above and a Rule 30(b)(6) deponent for deposition within 14 days from the date of this order. The Rule 30(b)(6) deponent need only discuss the topics consistent with this order.

## V. CONCLUSION

Based on the foregoing, within 14 days from the date of this order, Defendant shall produce: (1) redacted proposal and decision letters described herein, (2) Ms. Farrell for deposition; and (3) a Rule 30(b)(6) deponent to discuss topics consistent with this order.

This disposes of ECF No. 42.

**IT IS SO ORDERED.**

Dated: June 14, 2012

_____
LAUREL BEELER
United States Magistrate Judge